**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

SWAROVSKI NORTH AMERICA LIMITED, SWAROVSKI DIGITAL BUSINESS USA INC., and TOUCHSTONE CRYSTAL INC.,

*Plaintiffs*,

v.

U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,

*Defendants*.

Case No. 26-03533

# COMPLAINT

## INTRODUCTION

1. Starting in February 2025, President Trump imposed a series of tariffs under the International Emergency Economic Powers Act ("IEEPA").

2. Among those tariffs were the "fentanyl" tariffs on imports of Chinese- and Mexican-origin goods and the reciprocal tariffs that applied to imports originating from almost every country in the world.

3. The President asserted that these tariffs fell within his authority under IEEPA to "regulate . . . importation." *See* 50 U.S.C. § 1702(a)(1)(B).

4. But "the terms of IEEPA do not authorize tariffs." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 255 (2026).

5. Swarovski North America Limited, Swarovski Digital Business USA Inc., and Touchstone Crystal Inc. (collectively, the "Swarovski Importers") are U.S. importers of record that paid these IEEPA tariffs.

6. The Swarovski Importers seek an order directing the Defendants to refund the IEEPA tariffs that the Swarovski Importers paid, with interest as provided by law.

**PARTIES**

7. Swarovski North America Limited is a Rhode Island corporation with its principal place of business in Cranston, RI.

8. Swarovski Digital Business USA Inc. is a Rhode Island corporation with its principal place of business in Cranston, RI.

9. Touchstone Crystal Inc. is a Rhode Island corporation with its principal place of business in Cranston, RI.

10. U.S. Customs and Border Protection ("CBP") is the agency responsible for collecting duties and tariffs on goods imported into the United States, including the tariffs imposed under IEEPA.

11. Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

12. The United States of America received the IEEPA tariffs collected from the Swarovski Importers and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

**JURISDICTION**

13. This Court has subject-matter jurisdiction under 28 U.S.C. § 1581(i).

14. The Swarovski Importers' action is timely filed under 28 U.S.C. § 2636(i).

15. This Court has the powers of a district court and may award all appropriate relief, including declaratory judgments, injunctive relief, reliquidation, and refund judgments. 28 U.S.C. §§ 1585, 2643(a)(1), (c)(1).

16. As importers of record who paid the IEEPA tariffs and face ongoing injury without judicial relief, the Swarovski Importers have standing. *See* 28 U.S.C. § 2631(i).

## FACTS

### The Executive Orders Imposing the IEEPA Tariffs

17. On February 1, 2025, President Trump issued Executive Orders 14194 and 14195 imposing tariffs on imports of Chinese- and Mexican-origin goods ("Fentanyl Tariffs"). Exec. Order No. 14194, 90 Fed. Reg. 9117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9121 (Feb. 1, 2025).

18. Two months later, President Trump issued Executive Order 14257 imposing tariffs on nearly all imports of foreign-origin goods into the United States ("Reciprocal Tariffs"). Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 2, 2025).

19. The Fentanyl and Reciprocal Tariffs were imposed under IEEPA.

20. The Fentanyl and Reciprocal Tariffs remained in effect until February 20, 2026.

21. And CBP continued to collect the Fentanyl and Reciprocal Tariffs until February 24, 2026.

22. While they were in effect, the Fentanyl Tariffs ranged from 10% to 25% *ad valorem*.

23. The Reciprocal Tariffs ranged from 10% to 125% *ad valorem*, depending on the imported product's country of origin.

24. Executive Orders 14194, 14195, and 14257 (as amended) ("Challenged Executive Orders") modified the Harmonized Tariff Schedule of the United States ("HTSUS") to implement the Fentanyl and Reciprocal Tariffs (collectively, the "IEEPA Tariffs").

**CBP's Implementation of the IEEPA Tariffs**

25. CBP assesses and collects duties and tariffs based on the HTSUS.

26. The HTSUS can only be modified by the President. *Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009).

27. And CBP is required to classify imported merchandise in accordance with the HTSUS. 19 C.F.R. § 152.11.

28. CBP is also responsible for assessing and collecting any duties and tariffs based on the imported merchandise's HTSUS classification.

29. CBP has collected the IEEPA Tariffs since their effective dates based on the HTSUS classifications implementing the Challenged Executive Orders.

**The Executive Order Ending the IEEPA Tariffs**

30. Following the Supreme Court's decision in *Learning Resources, Inc. v. Trump*, President Trump issued Executive Order 14389. Exec. Order. No. 14389, 91 Fed. Reg. 9437 (Feb. 20, 2026).

31. Executive Order 14389 declared that the Challenged Executive Orders "shall no longer be in effect and, as soon as practicable, [the IEEPA Tariffs] shall no longer be collected." *Id.*

32. Executive Order 14389 also authorized modifications to the HTSUS that were "necessary to effectuate this order . . . through notice in the *Federal Register*." *Id.*

33. The HTSUS has not been modified to implement Executive Order 14389.

34. Instead, CBP "update[d] the Automated Commercial Environment (ACE) programming [to make] all [HTSUS] numbers applicable to the IEEPA tariffs . . . inactive in ACE as of February 24, 2026." U.S. Customs & Border Protec. *CSMS # 67834313 – Ending Collection*

*of International Emergency Economic Powers Act Duties* (Feb. 22, 2026), https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9.

35. Neither the Supreme Court's decision in *Learning Resources* nor Executive Order 14389 require or authorize CBP to remove the HTSUS classifications implementing the IEEPA Tariffs from importers' entries before February 20, 2026.

**Liquidation**

36. "Liquidation" is the final computation of duties and tariffs owed on an entry of imported merchandise. 19 C.F.R. § 159.1.

37. When CBP liquidates an entry, it "fix[es] the final classification and rate of duty applicable to [the imported] merchandise." 19 U.S.C. § 1500(b).

38. By operation of law, liquidation typically occurs 314 days after the entry date.

39. CBP has the authority to extend liquidation.

40. This Court also has equitable authority to suspend liquidation in appropriate circumstances. *See* 19 U.S.C. § 1504(a); *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1371 (Ct. Int'l Trade 2021).

41. Alternatively, "the Government [can] opt[] to stipulate that it will refund the unlawfully collected duties for" a plaintiff's entries. *In re Section 301 Cases*, 524 F. Supp. 3d at 1371.

42. Once an entry liquidates, the importer of record has 180 days to file a protest contesting "decisions of" CBP made during liquidation that were "adverse to the importer." *Id.* § 1514(a).

43. But "[a] protestable decision under § 1514(a) requires Customs to have 'engage[d] in some sort of decision-making process.'" *Rimco Inc. v. United States*, 98 F.4th 1046, 1052 (Fed. Cir. 2024) (quoting *Indus. Chems., Inc. v. United States*, 941 F.3d 1368, 1371 (Fed. Cir. 2019)).

44. Therefore, only "decisions that involve substantive determinations" by CBP are protestable. *Id.*

45. Alternatively, when CBP lacks discretion and is merely following someone else's instructions, its liquidation of an entry cannot be protested. *See id.* at 1053; *ARP Materials, Inc. v. United States*, 520 F. Supp. 3d 1341, 1358 (Ct. Int'l Trade 2021), *aff'd*, 47 F.4th 1370 (Fed. Cir. 2022) (concluding the issue "turns on whether [the importer] challenge[s] an 'actual Customs decision' . . . or a decision of" someone else).

**Reliquidation and Refunds**

46. The Defendants "have made very clear . . . that they will not object to the Court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA [tariffs] if such [tariffs] are found to be unlawful." Defs.' Opp'n to Mot. for Prelim. Inj. at 3, *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255 (Ct. Int'l Trade Nov. 11, 2025).

47. In fact, the Defendants have assured this Court "that they will not oppose either request by plaintiffs for, or the Court's authority to issue, a final and unappealable order requiring CBP to liquidate or reliquidate plaintiffs' subject entries with refunds to plaintiffs of the challenged IEEPA [tariffs] if such [tariffs] are found unlawful." *Id.* at 4.

48. Because the Defendants have "convinced this [C]ourt to accept that importers who paid IEEPA tariffs will be able to receive refunds after reliquidation, and . . . benefited from the [C]ourt's subsequent conclusion that importers will not experience irreparable harm as a consequence of liquidation, the Government cannot later 'assume a contrary position' to argue that

refunds are not available after liquidation." *AGS*, No. 25-00255, slip op. at 5 (Ct. Int'l Trade Dec. 15, 2025) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)); *see Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

**Prior Litigation Challenging the IEEPA Tariffs**

49. This Court held that IEEPA does not authorize the imposition of the Fentanyl or Reciprocal Tariffs. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025).

50. The Federal Circuit, sitting *en banc*, affirmed this Court's holding that the Fentanyl and Reciprocal Tariffs were unlawfully imposed. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025).

51. The Supreme Court affirmed the Federal Circuit's judgment, concluding that IEEPA does not authorize the President to impose any tariffs. *Learning Res.*, 607 U.S. at 255.

**The Swarovski Importers' Injuries**

52. The Swarovski Importers paid the IEEPA Tariffs on their imports into the United States.

53. Those tariffs were imposed through modifications to the HTSUS.

54. As of the date of this Complaint, the HTSUS continues to include the subheadings that implement the IEEPA Tariffs.

55. And CBP continues to liquidate the Swarovski Importers' entries with the IEEPA Tariffs assessed.

**COUNT I**
**Ultra Vires Executive Orders**

56. The Swarovski Importers reincorporate Paragraphs 1-55.

57. Because "the terms of IEEPA do not authorize tariffs," *id.*, the Challenged Executive Orders were void ab initio; the HTSUS modifications predicated on those executive orders were void ab initio; and the collection of the IEEPA Tariffs was unlawful and should be set aside as ultra vires.

**PRAYER FOR RELIEF**

The Swarovski Importers respectfully request that this Court:

(a) Order CBP to reliquidate any liquidated entries where the Swarovski Importers paid the IEEPA Tariffs, and the entry has not been included on a validated and accepted Consolidated Administration and Processing of Entries (CAPE) Declaration;

(b) Order CBP to liquidate any unliquidated entries without the IEEPA Tariffs;

(c) Order the United States to refund to the Swarovski Importers the IEEPA Tariffs collected from the Swarovski Importers, with interest as provided by law;

(d) Award the Swarovski Importers reasonable costs incurred in bringing this action, including attorneys' fees; and

(e) Grant such further relief as the Court deems proper.

Dated: August 10, 2026

/s/ Michael J. Lowell
Michael J. Lowell
Justin Angotti
REED SMITH LLP
1301 K Street, NW
Suite 1000 – East Tower
Washington, DC 20005
(202) 414-9200
(202) 414-9299 (fax)
mlowell@reedsmith.com
jangotti@reedsmith.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I certify that on August 10, 2026, copies of the Summons and Complaint were sent by certified mail, return receipt requested, to:

Attorney-in-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza, Room 346
New York, NY 10278

Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, Suite 4.4-B
Washington, DC 20229

/s/ Michael J. Lowell
Michael J. Lowell
REED SMITH LLP
1301 K Street, NW
Suite 1000 – East Tower
Washington, DC 20005
(202) 414-9200
(202) 414-9299 (fax)
mlowell@reedsmith.com

*Counsel for Plaintiffs*